SHERMAN (DOUBLEDAY v.). See Cases Nos. 4,019–4,022.

SHERMAN (EDWARDS v.). See Case No. 4,298.

SHERMAN, The (The GARY v.). See Case No. 5,259.

---

## Case No. 12,765.

SHERMAN v. INTERNATIONAL BANK et al.

[8 Biss. 371.] [1]

Circuit Court, N. D. Illinois. Dec., 1878. [2]

BANKRUPTCY — AMENDMENT TO PETITION — ASSIGNEE—WHEN ASSETS VEST—SPECULATIVE OPERATIONS.

1. Amendments to a petition in bankruptcy relate back to the time of the filing of the original petition, and have the same force and effect as though included in the petition itself.

[Cited in Re Ward, 12 Fed. 326.]

2. Where a party was adjudicated a bankrupt solely on the acts of bankruptcy stated in an amendment to the petition filed against him; and prior to the filing of the amendment, but subsequent to the filing of the original petition, he had disposed of certain securities: held, that the assignment to the assignee related back to the filing of the petition, and had effect from that date to transfer all assets of the bankrupt to the assignee, and that the bankrupt had no power to make any transfer of such securities, and that no title passed by his transfer and delivery.

3. The bankrupt and certain other parties made a contract by which a speculation in real estate was arranged, the bankrupt to have a certain per cent. interest and a division of the profits: Held, that the bankrupt had such an interest in the assets, which grew out of the real estate operations, as would pass to the assignee.

4. It was not the case of a partnership where all the partnership property vested in the other partners.

This was a bill in equity [by Hoyt Sherman, assignee] against the International Bank and others], filed for the purpose of reaching certain assets which, it was alleged, belonged to the bankrupt, B. F. Allen, and which were then held by some of the defendants.

John E. Burke, for complainant.

Rosenthal & Pence and John P. Ahrens, for defendants.

DRUMMOND, Circuit Judge. There are but two questions involved in the case, and I have resolved them both in favor of the plaintiff. The bankrupt was the president of the Cook County Bank, in Chicago, and failed in January, 1875. On the 23d of February following, a petition in bankruptcy was filed against him in the district court of Iowa. That petition alleged a certain act of bankruptcy committed by him; and Allen, on the 16th of March following, filed an answer denying the act of bankruptcy alleged in the petition. On the 22d of April, 1875, the petition in bankruptcy was amended by alleging other acts of bankruptcy; but Allen made no further objection, and the adjudication of bankruptcy followed on the same day. The adjudication was on the acts of bankruptcy stated in the amendment, and set out in the adjudication. Between the time that the petition was filed and the date of the amendment and adjudication, certain securities, which are the subject of controversy in this case, were transferred by Allen to the defendants under the following circumstances: He was arrested on a capias, and held by the officer under the process. In order to relieve himself from arrest, he transferred these securities, and was accordingly released. This was on the 20th of March. The question is as to the status of these securities at the time this took place. Had the bankrupt the right to transfer them? And could the defendants acquire property in them? I think not. The assignment which was made to the assignee related back to the 23d of February, when the petition in bankruptcy was filed, and had effect to transfer all the assets of the bankrupt from that time to the assignee; and the bankrupt, therefore, had no power over his assets to transfer them, and no party could acquire any right in them. By operation of law they vested in the assignee from the 23d of February, and the bankrupt neither could transfer them, nor could others acquire property in them.

It is claimed that inasmuch as the adjudication in bankruptcy was made upon the amendment which was filed, and as the transfer to the defendants was made before the amendment was filed, the legal effect was, that the assignment did not vest the assets of the bankrupt on the 23d of February, but on the 22d of April, when the amendment was made, and the adjudication took place. I am not prepared to say but that there might be a case where this principle would be true, as, for example, if there was a petition in bankruptcy filed, upon which the court could not render any decree—which could not be considered, within the meaning of the law, a

[1] Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

[2] [Affirmed in 101 U. S. 403.]

real, genuine petition in bankruptcy, then it might be true that where an amendment was allowed so as to give it effect as a petition in bankruptcy, the assignment would only take effect from the latter date; but where a legal petition in bankruptcy is filed, it is subject always to the right of the parties who are petitioners, whether the bankrupts, or creditors, to make amendments to the petition. It is filed subject to the power of the court to allow amendments, and, therefore, that is a condition which must always be understood, that it is subject to the right of the petitioners to make amendments, and to the power of the court to permit them; and when made, they, as a general rule, relate back, and take effect from the time that the petition in bankruptcy was filed. It is still a petition in bankruptcy; it still takes effect from the time that it is filed, and the property of the bankrupt is vested in the assignee, in my opinion, from the time that the petition is filed. So that in this case, as the bankrupt undertook to transfer assets of his after his petition in bankruptcy was filed, he had no power over them. The act gave no right, and the defendants acquired none by the transfer. The property by operation of law was vested in the assignee.

The next question is, whether or not these assets were a part of the estate of the bankrupt. I think they were. They grew out of a contract made between the bankrupt and certain other parties, by which a speculation in real estate was arranged, and the agreement contained in the contract was carried into effect, mainly by Allen, the bankrupt. He was to advance the money to purchase the real estate. Upon the advances he was to have ten per cent. interest; and the profits of the speculation were to be divided between him and certain other parties. At the time the petition in bankruptcy was filed, no one else, I think, was interested, although there were other parties originally interested in it; no one else, perhaps, except Mr. Tracy, now dead, and Mr. Withrow. The interest of Withrow, as I understand, has been ascertained by decree of the court against the assignee, and his rights have been adjudicated. I can have no doubt that there were rights in these assets which grew out of these real estate operations, and which were in the hands of Allen, which should properly vest in the assignee. It is not like the case of a partnership where all the partnership property is vested in the surviving partners, in the case of the death or bankruptcy of one of the partners, and where there are only certain interests which go to the assignee or to the estate. In this case, there was an actual interest such as could pass, and did pass, to the assignee, in this property and in these assets. Allen had made very large advances for the benefit of those who were interested with him. For those advances they owed him, and he had a first claim upon these assets for the advances, amounting to over $60,000, I think;

so that, that was such an interest in Allen at the time his petition in bankruptcy was filed, as would pass to his assignee. If there are any equities in other parties, of course, these equities can be adjusted by proper proceedings against the assignee. The assignee, as the representative of Allen, has the right to control these assets, subject to any equities that may exist.

Now, it may be said, and such is undoubtedly the fact, that this is a hard case for the defendants; but it is like any other act that is done where there are proceedings pending, which proceedings operate as a seizure of the property which is sought to be transferred. For the reasons I have given, I think that the bankruptcy proceedings did operate upon all the assets of the bankrupt from the time that the petition was filed, depriving the bankrupt of all right over them; and, of course, he could exercise none, and could clothe no one else with any right. It is, therefore, the ordinary case of a party who, under circumstances like these, deals with a person who has no right over the property. A great many cases of that kind occur in business matters, where an innocent party has to suffer in consequence of the want of power of another person to convey the property.

I think, therefore, that the plaintiff is entitled to a decree in this case. The questions are important, and especially the one in relation to the bankruptcy—the effect of the petition in bankruptcy and the amendment; and I think there is no decision exactly in point in such a case, although there are some which indicate pretty clearly the general current of authority as to the effect of a petition.

The opinion in this case was affirmed by the supreme court on appeal in Bank v. Sherman. 101 U. S. 403.

As to amendments to petitions in bankruptcy, see, also, In re Williams [Case No. 17,700]; In re Patterson [Id. 10,815]; Stone v. Connelly, 1 Metc. (Ky.) 652; Stoddard v. Myers, 8 Ohio, 203; Gibbon v. Daugherty, 10 Ohio St. 365.